1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

WADE B. COOK, and LAURA M. COOK,

Defendants.

No.  CR05-424Z

ORDER

This matter comes before the Court on Defendants' Rule 29 Motion for Judgment of Acquittal Based on Prosecutorial Misconduct and Deliberate Intrusion into the Attorney-Client Relationship, docket no. 277 (original motion filed at docket no. 275).  For the reasons stated in this Order, Defendants' Rule 29 motion is DENIED.

I.

BACKGROUND

Defendants Wade Cook and Laura Cook were charged in an eight count Second Superseding Indictment with conspiracy, income tax evasion, filing false tax returns and obstruction of the Internal Revenue Service.  After a jury trial, Defendant Wade Cook was

ORDER   -1-

found guilty of Counts 2-8; the jury was unable to reach a verdict as to Wade Cook on Count 1 and as to Laura Cook on all counts. At the conclusion of the Government's case, Defendants orally moved for judgment of acquittal under Rule 29. The Court deferred a ruling on the motion to permit Defendants to file a written motion. That motion is now before the Court.

The issues presented by Defendants' Rule 29 motion relate to disclosures by Timothy Berry, one of the Cooks' former attorneys, to the Government during the investigation of this case. Timothy Berry became an attorney on November 14, 1997. Prior to that date, while a law student, Mr. Berry began employment with United Support Associates, a Wade Cook related entity. Beginning in mid-1997, Mr. Berry started talking to the Cooks about charitable remainder trusts and estate planning. The Court has previously ruled that there was no attorney-client privilege on any matter prior to Mr. Berry becoming an attorney on November 14, 1997. It is undisputed that Mr. Berry provided legal advice to the Cooks after he became an attorney and until March 1999. However, the testimony is in conflict as to what additional work was done and when documents were produced.

The Government interviewed Mr. Berry several times between July 2003 and the trial, and the Government issued a subpoena for his testimony and records in March 2004. Mr. Berry testified before the Grand Jury in April 2004 and at the Cooks' trial. Defendants claim the Government engaged in misconduct in obtaining attorney-client privileged information from Mr. Berry during the course of the investigation of the case.

Defendants first raised their claims relating to Mr. Berry in October 2006 when they filed a motion in limine seeking to exclude the testimony of Mr. Berry regarding any matters within the scope of the attorney-client privilege and seeking to exclude all fruits of what the Government learned from Mr. Berry's disclosures to the Government. See Defs.' Mot. in Limine, docket no. 131 (the "Motion in Limine"). After briefing, the Court heard oral argument on the Motion in Limine on December 14, 2006, at which time the Court denied in

part and deferred in part the motion.  The Court held that there was no privilege as to communications prior to the time Mr. Berry became an attorney and also ordered the Government to produce agent notes of the interviews with Mr. Berry and related material. The Government produced the agent notes on December 20, 2006, docket no. 195, and filed a supplemental memorandum, docket no. 223.  On January 16, 2007, the Court held an evidentiary hearing regarding the factual issues presented in the Motion in Limine, and Mr. Berry testified at length at that hearing.  On January 22, 2007, the Court heard additional oral argument on the Motion in Limine, and the Government filed a supplemental memorandum on the issues, docket no. 243.  On January 23, 2007, the Court issued an oral ruling and entered written findings of fact; the Court concluded that Mr. Berry would be permitted to testify at trial about communications with the Cooks after Mr. Berry became an attorney based on the Cooks' waiver of the privilege.  Order, docket no. 246.  The Court's findings and conclusions in its January 23, 2007 Order are incorporated by reference in this Order.  In its January 23, 2007 Order, the Court stated the following, which is directly pertinent to Defendants' Rule 29 motion now before the Court:

> I find that the Government did not take any action to intentionally interfere with the attorney-client relationship between the Cooks and Tim Berry.  The Government did not ask for and did not understand it was obtaining information from Mr. Berry that would invade the privilege.  To the extent Mr. Berry told the Government more than he should – to the extent he revealed confidential communications after he became a lawyer – it was done by Mr. Berry.  The Government did not improperly induce Mr. Berry to breach his ethical duty of confidentiality to his client.

Order at 4.

As a result of the Motion in Limine, the Court has previously considered and rejected Defendants' claims of government misconduct.  Notwithstanding the Court's ruling on the Motion in Limine, Defendants now attempt to reargue issues previously rejected.  Although Defendants present essentially the same substantive arguments, the Rule 29 motion before the Court seeks a different remedy than did the Motion in Limine – namely, the dismissal of the Second Superceding Indictment against the Cooks rather than the exclusion of Mr.

Berry's testimony at trial.[1]  Nothing in Defendants' present motion suggests that any remedy is warranted for the government's conduct in this case with regard to Mr. Berry.

II.

STANDARD OF REVIEW

Defendants bring this "Rule 29 Motion for Judgment of Acquittal Based on Prosecutorial Misconduct and Deliberate Intrusion into the Attorney-Client Relationship." Rule 29 authorizes a motion for judgment of acquittal based on a determination that "the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29.  Here, Defendants' motion is premised entirely on allegation of outrageous government conduct during the criminal investigation of the Cooks and is not premised on an allegation of insufficient evidence presented at trial.  Defendants' motion is more accurately described as a motion to dismiss the Second Superceding Indictment.  "All motions to dismiss an indictment must be raised pretrial."  United States v. Lopez, 185 F.3d 870, 1999 WL 362967 at *4 (9th Cir. May 28, 1999) (noting that a post-trial motion to dismiss the indictment for outrageous government conduct should be unreviewable); see also FED. R. CRIM. P. 12(b)(3)(B); United States v. Figueroa-Ocampo, 138 Fed. Appx. 988, 989 (9th Cir. July 13, 2005) (a motion to dismiss the indictment brought six months after trial is untimely under FED. R. CRIM. P. 12(b)(3)(B)).

Even assuming that Defendants may bring a Rule 29 motion based on outrageous government conduct, such motions are only granted in "extreme cases."  United States v. Fernandez, 388 F.3d 1199, 1238 (9th Cir. 2004).  "Outrageous government conduct" means that "the government conduct in securing an indictment was so shocking to due process values that the indictment must be dismissed."  United States v. Holler, 411 F.3d 1061, 1065 (9th Cir. 2005) (quoting United States v. Montoya, 45 F.3d 1286, 1300 (9th Cir. 1995)).

---

[1] The Motion in Limine, docket no. 131, did not move for the dismissal of the indictment, despite the Court's Minute Entry, docket no. 234, which indicates the contrary.

ORDER   -4-

Outrageous government conduct occurs when the government conduct "violates fundamental fairness and is 'shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment.'" <u>United States v. Gurolla</u>, 333 F.3d 944, 950 (9th Cir. 2003) (quoting <u>United States v. Russell</u>, 411 U.S. 423, 431-32 (1973)).  Whether government conduct is outrageous "turns on the totality of the circumstances," <u>United States v. Marshank</u>, 777 F. Supp. 1507, 1523 (N.D. Cal. 1991), and "is an issue of law." <u>United States v. McClelland</u>, 72 F.3d 717, 721 (9th Cir. 1995).

"A court may exercise its supervisory powers to dismiss an indictment in response to outrageous government conduct that falls short of a due process violation." <u>United States v. Fernandez</u>, 388 F.3d at 1239 (quoting <u>United States v. Ross</u>, 372 F.3d 1097, 1109 (9th Cir. 2004)).  That power should be exercised only where the prosecutorial misconduct was "flagrant" and "cause[d] substantial prejudice to the defendant." <u>Id.</u>

A defendant who claims government misconduct based on invasion of the attorney-client privilege is limited.  The attorney-client privilege is an evidentiary privilege, not a constitutional right. <u>See</u> <u>Partington v. Gedan</u>, 961 F.2d 852, 863 (9th Cir. 1992).  The fact that an attorney fails to assert an attorney-client privilege does not transform a lawful investigation into government misconduct. <u>See</u> <u>United States v. Rogers</u>, 751 F.2d 1074, 1080 (9th Cir. 1985).  For there to be outrageous government conduct, the government must play an active role in an attorney's egregious breach of his ethical obligations. <u>See</u> <u>e.g.</u>, <u>United States v. Marshank</u>, 777 F. Supp. at 1524 (government actively collaborated with a defendant's lawyer to build a case against the defendant).

III.

<u>ANALYSIS</u>

Defendants contend the Government's conduct violated Defendants' due process rights under the Fifth Amendment because evidence procured from Mr. Berry "irrevocably

1    tainted the Government's investigation – the fruit of the poisonous tree."  Defs.' Mot., docket

2    no. 277, at 3.  Defendants also ask the Court to exercise its inherent supervisory powers to

3    dismiss the indictment because the prosecutorial misconduct was "flagrant" and

4    "substantially prejudiced the Cooks."  Defs.' Reply, docket no. 313, at 11.

5         In support of their Rule 29 motion, Defendants rely heavily on several interactions

6    between Mr. Berry and the Government during the criminal investigation of this case.  First,

7    Defendants argue that Mr. Berry improperly produced two documents, Exhibits 228 and 230,

8    to the Government, and Defendants suggest the admission of these exhibits and related

9    testimony at trial was critical to the Government's case.  Second, Defendants argue that the

10   Government's subpoena to Mr. Berry on March 29, 2004, which requested his Grand Jury

11   testimony and all documents relating to the years 1998-2001, improperly sought attorney-

12   client privileged information.  Lastly, Defendants argue that Mr. Berry improperly disclosed

13   information to the Government about the charitable remainder trust ("CRT") and the Never

14   Ending Wealth Limited Partnership (the "NEW LP").  The Court addresses each of these

15   arguments in turn.

16        (1)    Exhibits 228 and 230

17        Exhibit 228 is an undated "owner's manual for CRT" written by Mr. Berry and

18   addressed to Eric Marler.  Schill Decl. Ex. 4.  On its face, it is unclear when Exhibit 228 was

19   prepared.  Mr. Berry testified at trial that he provided Exhibit 228 to Mr. Marler in

20   September 1998.  See Trial Transcript, docket 265, at 155.  Even if Exhibit 228 was provided

21   to Mr. Marler after Mr. Berry became an attorney, Defendants have failed to establish that

22   the disclosure of the document to Mr. Marler, a financial consultant hired not by Mr. Berry

23   but by Mr. Cook, would be subject to the attorney-client privilege.  Furthermore, Exhibit 228

24   is similar to Exhibit 229, which Mr. Berry prepared and provided to the Cooks before he

25   became an attorney.  Exhibit 228 appears to be a later version of Exhibit 229; it contains no

26   confidential information not contained in the earlier version.  Exhibits 228 and 229 were the

ORDER   -6-

1  subject of extensive direct and cross examination at the evidentiary hearing.  As the

2  Government notes, Exhibit 228 contains "boiler plate legal analysis" relating to the

3  administration of a CRT.

4         Exhibit 230 is an undated letter to Wade Cook from Mr. Berry.  Schill Decl. Ex. 3.

5  This exhibit was also the subject of extensive direct and cross examination of Mr. Berry

6  during the evidentiary hearing.  Based on the dating of publications referenced in the

7  document and the testimony at the evidentiary hearing, it now appears Exhibit 230 was

8  prepared after Mr. Berry became an attorney.  See Gov't Suppl. Mem., docket no. 243, at 2;

9  Schill Decl. Ex. 2 (Tr. of Evidentiary Hearing) at 160:3-9.  However, like Exhibit 228,

10 Exhibit 230 appears to be a later version of Exhibit 229.  More importantly, nothing

11 contained in Exhibit 230 was material to the principal issues litigated at trial – e.g., Did the

12 Cooks fund the CRT and thereafter "borrow" assets from the CRT with the intent of

13 repaying the loans?

14        The notion that Exhibits 228 and 230 were crucial to the Government's case could not

15 be further from the truth.  As the Government established at trial, the CRT created by the

16 Cooks had no substance.  "It was merely an illusion to mask the Cooks' tax evasion."  Gov't

17 Resp., docket 311, at 9.  There was substantial evidence presented at trial that the CRT

18 signed by the Cooks was never implemented and funds were systematically and improperly

19 removed from the CRT.  The CRT had no trustee, no bank account, no records, no genuine

20 charitable purpose, and no tax returns were ever filed.  Moreover, there is no clear evidence

21 that the Government knew during the course of its investigation that Mr. Berry prepared

22 Exhibits 228 and 230 after he became an attorney.[2]  Accordingly, the Government's receipt

23

24

---

25        [2] Mr. Westinghouse's "after attorney" notation on the back of Exhibit 230, Schill Decl.
   Ex. 11,  represents Mr. Westinghouse's good faith effort to date this letter.  This notation was
26 disclosed to Defendants approximately one year before trial.  Johnson Decl., docket no. 311, ¶
   7, Ex. 1 at 4 (referencing Bates numbers TB000001-000212, which includes Ex. 230).

1    of Exhibits 228 and 230 from Mr. Berry cannot be considered shocking to due process

2    values, "flagrant," or the cause of any substantial prejudice to the Cooks.

3              (2)    Grand Jury Subpoena - March 2004

4              Defendants also rely heavily on a subpoena to Timothy Berry on March 29, 2004,

5    which requested his Grand Jury testimony and documents for the years 1998-2001, including

6    "letters, notes, memoranda, proposals, instructions or correspondence relating to" the Cooks

7    and their trust and partnership entities at issue in this case.  Schill Decl., docket no. 277, Ex.

8    1 (Defs.' Trial Ex. A-48).  The fact that the subpoena requested testimony and production of

9    documents for a period when Mr. Berry was an attorney does not provide a basis for the

10   claimed relief sought in the Defendants' motion.  The Government advised Mr. Berry during

11   their first meeting in the summer of 2003 that they did not intend to ask for or receive any

12   confidential information protected by an attorney-client privilege.  Defendants have not

13   identified any new documents produced pursuant to this subpoena that violated any attorney-

14   client privilege.  To the extent Mr. Berry testified or produced privileged material, it was at

15   most a breach of the attorney's ethical duty of confidentiality to his clients.  See United

16   States v. Rogers, 751 F.2d at 1080.

17             (3)    CRT / Never Ending Wealth LP

18             Defendants contend that because no documents referring to NEW LP existed prior to

19   March 1998, Mr. Berry's provision of information about the Cooks' charitable remainder

20   trust/limited partnership structure to the Government violated the attorney-client privilege.

21   Defendants also contend that the Government's attempts to show evidence that about the

22   charitable remainder trust/limited partnership structure prior to November 1997 are

23   misleading.

24             These contentions are unsupported by the evidence.  The Cooks both testified, in their

25   pretrial sworn statements in 2005, that the CRT was Mr. Berry's idea, that Berry drew

26   diagrams of how royalties would be held in a limited partnership, and that the CRT

1  formation documents were first signed on October 14, 1997 and November 1, 1997.[3]

2  Various exhibits and Mr. Berry's testimony provide substantial evidence that the creation of

3  the CRT and Mr. Berry's advice to the Cooks regarding a limited partnership occurred before

4  Mr. Berry became an attorney.  See Pls.' Trial Exs. 226, 227, 229, 231, 234a-d, 425 and 426.

5  The Cooks made no secret of the charitable remainder trust/limited partnership structure and

6  discussed it at various seminars.  Defendants do not dispute the Government's contention

7  that the Cooks' charitable remainder trust was also voluntarily disclosed to Washington

8  Mutual Bank in 2000 and to the Federal Trade Commission in 2002.  Gov't Resp. at 10.

9  Moreover, the Cooks' prior criminal defense counsel provided various documents

10  referencing the structure to the Government.  The Government also asserts that it was aware

11  of the NEW LP prior to any contact with Mr. Berry.  Johnson Decl. ¶¶ 2-5.  It is highly

12  unlikely that Mr. Berry's disclosure of information about the charitable remainder

13  trust/limited partnership structure to the Government violated the attorney-client privilege.

14  Certainly, the Government's receipt of such information does not shock due process values,

15  was not flagrant, and did not cause substantial prejudice to the Cooks.

16                                                  IV.

17                                          CONCLUSION

18          There is no basis for a dismissal of the indictment in this case.  The Government did

19  not take any action to intentionally interfere with the attorney-client relationship between the

20  Cooks and Mr. Berry.  Mr. Berry testified at the evidentiary hearing and at trial that the

21  Government has never asked him to disclose any confidential information and to the best of

22  his ability he has avoided providing privileged materials to the Government.  Defendants

23

24  _____

25      [3] The Cooks specifically testified the CRT formation documents were not backdated.
    Laura Cook Transcript at 56-59; Wade Cook Transcript at 143.  Although subsequent testimony
26  at trial by others raises serious questions as to whether this testimony was true, there was no
    government misconduct in believing that these documents were created prior to Mr. Berry's
    admission to the bar.

ORDER   -9-

1   have failed to establish any government conduct which would constitute a due process

2   violation or justify the Court's exercise of its supervisory powers to dismiss the indictment.

3        IT IS SO ORDERED.

4        DATED this 4th day of April, 2007.

5

6                                      Thomas S. Zilly

7                                      United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER   -10-